**Opinion filed May 7, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00308-CV

_____

## IN THE INTEREST OF S.P. AND H.P., CHILDREN

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 56,186**

### M E M O R A N D U M   O P I N I O N

The trial court entered an order in which it terminated the parental rights of the mother and father of S.P. and H.P. The mother appeals and, in a single issue on appeal, challenges the legal and factual sufficiency of the evidence to support the finding that termination of her parental rights is in the best interest of the children. We affirm.

### I. *Termination*

Termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine on appeal

if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001. In this case, the trial court found that the mother committed two of the acts listed in Section 161.001(1). The trial court found that the mother had knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and that the mother had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. *See id.* § 161.001(1)(D), (E). The mother does not challenge the sufficiency of the evidence to support either of these findings. The trial court also found that termination was in the children's best interest, a finding that is challenged by the mother. *See id.* § 161.001(2).

## II. *Analysis: Best Interest*

The question before us is whether the best interest finding is supported by legally and factually sufficient evidence. With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.

1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

The record shows that the removal in this case stemmed from an injury to H.P. that occurred on June 24, 2013, when he was less than nine months old. A detective with the Midland Police Department responded to a call of an unconscious child at an apartment. The child was taken to the emergency room, and the detective talked to the mother at the hospital. The mother was the only adult present when H.P. was injured. H.P.'s sister, S.P., who was not yet two years old, may also have been present. The mother said that H.P. was jumping on a futon, that she heard a noise, and that she turned around and saw H.P. hit his head on the futon, which was metal. When the detective informed the mother that her story was not consistent with the severe injury sustained by H.P., the mother told the detective that she "shook the child one time hard" that day. The mother later denied that she had shaken H.P. and told her counselor that the doctors "made all this up." At the time of the hearing on termination, a felony criminal case was pending against the mother. Consequently, when the mother was called to testify, she invoked her Fifth Amendment right and did not answer any questions regarding H.P.'s injury.

While in the mother's care, H.P. suffered a subdural hematoma that required surgery to evacuate blood and place a shunt for drainage. A significant amount of force was required for the type of injury suffered by H.P. A medical doctor who specialized in child-abuse pediatrics testified that the mother's story was not believable. According to the doctor, the type of injury suffered by H.P. could have been caused by shaking him, and he would have become symptomatic immediately. H.P.'s symptoms as the hospital included seizures, loss of consciousness, subdural hemorrhage, and retinal hemorrhage. The doctor testified that retinal hemorrhage is associated with a head injury caused by being crushed or shaken. The type of severe injury suffered by H.P. can lead to future developmental delays, cerebral palsy, and paralysis.

The Department of Family and Protective Services removed the children after H.P. was injured. While in the Department's care, it was discovered that S.P. had a genetic disorder and was autistic. Both children were placed in a licensed therapeutic foster home and were doing well there. At the time of trial, S.P. was almost three years old and spoke no words. S.P. screamed and made squealing noises, which seemed to bother H.P. While in foster care, S.P. and H.P. have received therapy and have been treated by specialists—care that they were not receiving while with their parents. For six months after his injury, H.P. did not have much use of his left side. He was also developmentally delayed, but he no longer suffered from seizures.

The Department's goal for the children was termination of the parents' rights and adoption by a non-relative. The current foster parents had agreed to keep the children and help transition them to an adoptive home. The licensed professional counselor who counseled the mother had "a big concern" about returning the children to the mother. The Department's caseworker testified that the mother lacked the necessary skills to parent the children, who are both special needs

4

children.  The mother refused to take her medications and lacked a support system.  Furthermore, H.P. was severely injured while in his mother's care.  The CASA volunteer recommended that the parental rights of both parents be terminated.  She noted the parents' unstable housing, the mother's refusal to take her medication, the special needs of the children, and the need for stability as reasons for her recommendation.  The children expressed no vocal desires.

Based upon the evidence in the record and the *Holley* factors, we cannot hold that the trial court's best interest finding is not supported by clear and convincing evidence; the trial court could reasonably have formed a firm belief or conviction that it would be in the best interest of both children for the mother's parental rights to be terminated.  *See Holley*, 544 S.W.2d at 371–72.  The evidence is legally and factually sufficient to support the best interest finding.  We overrule the mother's sole issue.

III. *This Court's Ruling*

We affirm the trial court's order of termination.


MIKE WILLSON

JUSTICE


May 7, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.